NORMA J. GODDEN, GUARDIAN AND NEXT FRIEND AND PAYEE FOR PATRICIA A. DORN, A MINOR, APPELLANT, V. DEPARTMENT OF PUBLIC WELFARE OF THE STATE OF NEBRASKA ET AL., APPELLEES.
LAWRENCE IDEUS, GUARDIAN AND NEXT FRIEND AND PAYEE FOR PAMELA SUE DORN, A MINOR, APPELLANT, V. DEPARTMENT OF PUBLIC WELFARE OF THE STATE OF NEBRASKA ET AL., APPELLEES.

226 N. W. 2d 627

Filed March 6, 1975. Nos. 39620, 39628.

Vard R. Johnson, Terrence J. Ferguson, and Steven Swihart, for appellants.

Clarence A. H. Meyer, Attorney General, E. D. Warnsholz, and Michael J. Rumbaugh, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Plaintiffs, as guardians and next friends, appeal the judgment of the District Court for Lancaster County affirming rulings of the Department of Public Welfare rejecting their applications for aid for dependent children (AFDC) for their minor wards. The wards are beneficiaries of a trust fund which if presently payable

to them would make them ineligible for public assistance benefits. We reverse.

On July 30, 1965, the county court of Gage County, Nebraska, distributed the proceeds of a wrongful death settlement in a case involving the mother of the wards. So far as material herein, the decree provided: "That all the remainder of the proceeds, after the payment of costs herein ordered to be paid, should be placed in trust or in a guardianship fund for the benefit of the surviving children of Loretta Dorn, decedent, whose names are: Darrell Gene Dorn, Patricia Anne Dorn, Dennis Elmer Dorn, Bruce Allen Dorn and Pamela Sue Dorn, in equal shares, share and share alike, and said funds are to be used by the trustee or the guardian as may be directed by the Court for the direct benefit of the above named children and shall be used for their health, education, nurture, care and welfare in such amount and at such times as may be deemed necessary and proper upon application being made to this Court."

On November 12, 1965, the county court ordered that the proceeds from the wrongful death settlement should be placed in trust at interest with the Beatrice National Bank and Trust Company for the benefit of the Dorn children. The terms of the trust were: "That the best interest of the beneficiaries of the proceeds would be to place said funds in an interest-bearing savings account and to hold said funds for the benefit of the named children until there is a demonstrative need for paying any of said proceeds to any of the beneficiaries or until such funds are needed for their education or the necessities of life which cannot be provided for them by the father of said children or until they reach the age of 21 years." See § 30-810, R. R. S. 1943.

The issue presented in both cases is identical. Both wards had been receiving aid for dependent children. They were terminated when the Department of Public Welfare learned of the proceeds from the wrongful

death settlement which was being held in trust by the Beatrice National Bank and Trust Company.

It was not until January 13, 1971, that a legal guardian was appointed for Pamela Sue Dorn by the county court of Lancaster County. On July 13, 1971, the county court of Douglas County appointed a legal guardian for Patricia A. Dorn.

After welfare benefits were terminated, the guardians made application to the Gage County court for the use and possession of the trust funds. Each of the wards has a one-fifth interest in the fund, which at that time amounted to approximately $17,700. On June 25, 1973, the county judge held that no part of said funds could be used at the present time for the support and maintenance of said wards. No appeal was taken from this order. The guardians then renewed their respective applications for welfare benefits. The Department of Public Welfare considered the order of the county court to be an arbitrary exercise of jurisdiction, and chose to ignore it. In doing so, it held that the funds were a resource which must be considered in determining eligibility for public assistance for the wards.

The primary purpose of allowing recovery for a wrongful death is to compensate the survivors for their pecuniary loss; and to compensate them for the care, maintenance, and support that they could reasonably have expected to receive had the decedent lived. § 30-810, R. S. Supp., 1972. The present use of the funds, however, is not the issue before us. Regardless of how arbitrary the order of the county judge may be, it is binding on all parties affected until it is judicially reversed or modified. This action is not a proper proceeding to accomplish that purpose. It is not within the power of the Department of Public Welfare to second-guess a judicial officer or to ignore his order. Until the order of the county judge, arbitrary or otherwise, is reversed or modified, the money held in trust is unavailable to the wards. It is the present availability of the funds

which is determinative herein. Until the guardians take steps to acquire possession by a further application to the county court, and an appeal if the order is adverse to them, the funds are not available to them.

The AFDC program is designed to provide financial assistance to needy dependent children and the parents who live with and care for them. It is financed in large measure by the federal government on a matching funds basis, and participating states must submit AFDC plans in conformity with the act and the regulations promulgated thereunder by the Department of Health, Education, and Welfare. The program is, however, administered by the states, which are given broad discretion in determining both the standard of need and the level of benefits. Shea v. Vialpando (1974), 416 U. S. 251, 94 S. Ct. 1746, 40 L. Ed. 2d 120. In that case, Mr. Justice Powell said: "The 'income and resources' attributable to an applicant, defined in 45 CFR S. 233.20 (a) (6) (iii-viii), consist generally of 'only such net income as is actually available for current use on a regular basis . . . and only currently available resources.'"

The action of the Department of Public Welfare was arbitrary and capricious in determining that the fund was available when it knew that the requests of the guardians for said funds had been denied. An administrative agency may not act unreasonably or capriciously. Its judgment must be based on a factual foundation, and the agency or officer must give due consideration to all the essential elements involved. If material elements have not been given due consideration, the decision is void. Block v. Lincoln Tel. & Tel. Co. (1960), 170 Neb. 531, 103 N. W. 2d 312.

From a cursory examination of relevant laws and regulations, it does not appear that it was the intention of Congress or the Legislature to exclude proceeds of a wrongful death settlement from "any other income or resources of the child" in determining need for public aid. That, however, is not the issue.

We do not question the right of the Department of Public. Welfare, if its practice permits, to enter a conditional order to require the guardians to exhaust their remedies so long as it does not deny assistance to the wards pending such determination. This was the procedure followed in Fitzpatrick v. Illinois Department of Public Aid (1972), 52 Ill. 2d 218, 287 N. E. 2d 666. Until, however, the funds are actually available to the respective guardians, they are not current resources which may be considered in determining eligibility for aid for dependent children.

In view of the result we have reached, there is no need to consider the other questions raised by the guardians. The judgment is reversed and the cause remanded for proceedings consistent with this opinion.

REVERSED AND REMANDED.

CLINTON, J., concurring.

I concur in the result. I cannot agree with the gratuitous suggestions made in two paragraphs toward the end of the opinion. I further disagree with the suggestion that the judgment of the county court which was unappealed from was in some way arbitrary, and disagree with the implication that the law requires that the principal of the small wrongful death benefit must be immediately spent for the day-to-day living expenses of the dependent rather than expended at some future time for the long-range welfare of the child. Such a blind policy would serve neither the dependent nor society.